UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

VAN JENKINS,

           Plaintiff,           Case No. 1:13-cv-1306

v.           Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

           Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, 18 U.S.C. §§ 241, 242, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 et seq., and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and he will pay an initial partial filing fee when funds become available. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying the foregoing standards, the Court will dismiss Defendants MDOC, Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely, and will transfer the remainder of the action to the Eastern District of Michigan.

**Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at G. Robert Cotton Correctional Facility, though the actions about which he complains occurred while he was on parole in Lincoln Park, Michigan, and while he was confined at the Detroit Reentry Center and Charles Egeler Reception & Guidance Center (RGC).  In his amended complaint, Plaintiff sues the MDOC, the Michigan Parole Board, the "Absconder Recovery Unit" of the MDOC, and the following MDOC employees:  Parole Agent Patricia M. Clark, Property Room Officer (unknown) Fox, Probation Agent Erika T. Saxton, Officer (unknown) Bradley, Parole Agent Gary Edwards, FOA Deputy Director Charles Sinclair, Sergeant (unknown) Beam, Grievance Coordinator A. White, Hearing Examiner Adrian L. Green, Michelle Risely,[1] who works at the "Field Operations Administration Office" of Parole and Probation Services, and unidentified officers, agents and staff ("Unknown Parties").  (Am. Compl., docket #10, Page ID#90.)

In his amended complaint, Plaintiff alleges that on September 13, 2013, while he was on parole, he went to the probation office in Lincoln Park, Michigan.  As he entered the office, three officers "assaulted" him, "grabbing him and violently twisting his body and arms[.]"  (Ex. to Am. Compl., docket #10-1, Page ID#95.)  Handcuffs were then placed tightly on his wrists, and he was placed under arrest for an alleged parole violation.  Plaintiff contends that the officers' actions were unnecessary and excessive, and they "inflam[ed] his spina bifida disability and [h]ypertension disorder[,] causing him to gasp for air[, and to become] overheated[.]" (*Id.*)  Agent Saxton was present at the time, and Plaintiff claims that she failed to protect him or to provide medical

---

[1]Sometimes spelled "Risley" in the pleadings.  (*See* Am. Compl., docket #10-1, Page ID#98.)

assistance. In addition, Plaintiff's backpack, which contained documents and other belongings, was seized by the officers.

Two officers from the Absconder Recovery Unit, including Officer Bradley, came to the probation office to transport Plaintiff to the Detroit Reentry Center. They forced him to stand up and placed another pair of handcuffs on his wrists. Plaintiff told them that he has spina bifida and hypertension, and asked them to loosen the handcuffs. Defendant Bradley refused Plaintiff's request and grabbed Plaintiff's arm[2] to move him out of the building. Plaintiff was then taken to the Detroit Reentry Center. Plaintiff claims that he sustained unidentified injuries, but while he was in custody at the Detroit Reentry Center, he did not receive medical attention for his injuries. Also, though he did receive medication for his hypertension, he did not receive medication for radiating pain in his back and arm, which had been prescribed for him prior to his arrest. Plaintiff asserts that he wrote a grievance about the alleged "assault," on September 13, 2013, but he did not receive a response until October 28, 2013. (*Id.* at Page ID#96.)

On September 17, 2013, Plaintiff was interviewed by Agent Edwards, who served Plaintiff with "untimely" parole violation charges. (*Id.*) Plaintiff requested that an attorney be appointed to represent him at his preliminary parole violation hearing, because he possessed evidence that he intended to present in his favor, and he needed assistance obtaining witnesses to testify in his defense. According to Plaintiff, MDOC policy required Edwards to forward Plaintiff's request to the hearing examiner. Instead, Edwards allegedly told the hearing examiner that Plaintiff waived his right to a preliminary parole violation hearing, thereby preventing Plaintiff from receiving the assistance of an attorney.

---

[2]Plaintiff points out that, at some time prior to the events at issue in the complaint, before he was released on parole, he broke a bone in the elbow of that arm.

Plaintiff received a preliminary parole violation hearing on September 23, 2013, at which he again requested the assistance of an attorney, as well as an opportunity to present witnesses and evidence in his favor, and to cross-examine adverse witnesses. Apparently, his requests were denied, and he was told that his backpack, which contained some of his evidence, had been destroyed.[3]

Plaintiff wrote a kite to Property Room Officer Fox to obtain his legal property, but he was told that he should send a kite to Sergeant Beam. Plaintiff sent a kite to Defendant Beam on October 8, 2013, but he received no response.

Plaintiff also sent a letter to FOA Deputy Director Sinclair, complaining about an alleged deprivation of rights in his preliminary parole violation proceedings, but he received no response. Apparently, an attorney was appointed for Plaintiff in connection with his parole violation proceedings, and she visited him on October 8, 2013. Plaintiff informed her of his letter to Defendant Sinclair regarding the preliminary parole violation hearing.

Sometime thereafter, Plaintiff was transferred to another MDOC facility, Charles Egeler Reception & Guidance Center (RGC). On October 24, 2013, he sent a letter to Defendant Risely regarding the deficiencies in his preliminary parole violation proceedings. On October 29, 2013, he received a response indicating that a parole revocation hearing would be held on December 2, 2013, at the Detroit Reentry Center. Plaintiff does not describe the outcome of those proceedings, but apparently his parole was revoked.

---

[3]Plaintiff's complaint does not identify the official who conducted the hearing, but according to documents filed in supplement to the complaint (docket #4-1), Defendant Green conducted the hearing. (*See* 9/18/2013 MDOC Preliminary Parole Violation Hearing - Report of Findings, docket #4-1, Page ID#25.) Apparently, the hearing was held at "Washtenaw/Ann Arbor/Parole/REP" in Ypsilanti, Michigan. (*See id.*; Notice of Preliminary Parole Violation Hr'g, docket #4-1, Page ID#23.)

**Plaintiff's Claims / Request for Relief**

Plaintiff asserts several claims for relief in the complaint. In "Count I," he asserts that Defendants Edwards, Clark, Green, Fox, Beam, Sinclair, Risely, White, and Saxton, as well as other unidentified officials, are liable for damages under the ADA and 18 U.S.C. §§ 241, 242. In "Count II," he asserts that Defendant Bradley and several unidentified officials are liable for aggravated assault. In "Count III," he asserts that Defendants Clark and Bradley, and other unidentified officials, falsely and/or illegally arrested and imprisoned him. In "Count IV," he asserts that Defendants Edwards, Green, Clark, Fox, Beam, Sinclair, Risely, and other officials, deprived him of his right to disclosure of evidence against him, to present witnesses and evidence in his favor, and to confront adverse witnesses in connection with his parole violation proceedings, in violation of 18 U.S.C. § 242, prison policy and state law. In "Count V," he claims that Defendant MDOC is liable under the ADA and 18 U.S.C. §§ 241 and 242, for developing and maintaining policies or customs that resulted in: deliberate indifference toward Plaintiff's constitutional rights, improper investigation of complaints by disabled prisoners, and inadequate training and supervision of MDOC employees.

As relief, Plaintiff seeks a protective order to ensure his protection and to ensure the administration of "proper medicine." (Am. Compl., docket #10, Page ID#100.) He also seeks compensatory damages and costs. Finally, he seeks appointment of counsel for these proceedings.

**Preliminary Relief**

Plaintiff requests a preliminary injunction to provide for his protection and the provision of unidentified medicine. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir.

2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. Plaintiff's request for an injunction is apparently premised on a need for physical protection and proper medication, which prison officials are generally obligated to provide under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment

may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). In addition, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

In order for a prisoner to prevail on such a claim, however, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on an any claim related to his present physical health and safety. Indeed, Plaintiff does not identify a serious risk to his health or safety that can be addressed by an injunction, let alone claim that Defendants have been deliberately indifferent to it.

Second, the presence of irreparable harm in the absence of an injunction is not evident. Plaintiff does not identify the harm that could occur if the Court fails to issue an injunction to provide for his protection or to require the provision of unidentified medication.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security and the proper care of inmates are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's request for preliminary relief will be denied.

## Analysis of Complaint

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### I. 18 U.S.C. §§ 241, 242

Plaintiff asserts that the MDOC and other Defendants are liable under 18 U.S.C. §§ 241, 242, which are criminal statutes. As such, they do not create a private cause of action. Plaintiff does not have a right to initiate criminal charges. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate criminal proceedings); *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692-93 (6th Cir. 1994) (private party lacks standing to compel the state to pursue criminal or civil actions). As a private citizen, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986). Thus, Plaintiff does not state a claim against Defendants under the foregoing statutes.

### II. ADA

Plaintiff also asserts that the MDOC is liable under the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that Defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from Defendants'

services, programs, or activities, or was otherwise discriminated against by Defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Though the State of Michigan (acting through the MDOC) is immune from Plaintiff's claims under 42 U.S.C. § 1983, *see* Section III, *infra*, it is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 157, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.*

Even assuming that the MDOC and other Defendants are not immune from Plaintiff's ADA claim, however, he fails to state a claim. He does not adequately allege that he was denied "services, programs, or activities" on account of a disability, or that he was treated differently because of his disability. He implies that his complaints about official misconduct were not properly investigated because he is disabled, but his allegations on that point are wholly conclusory. He fails to identify any factual basis for his implied assertion that he was treated differently because of his disability, let alone that the MDOC has a custom or policy of discriminating against disabled prisoners or denying them access to services, programs or activities. Indeed, it is not even clear that

Plaintiff is disabled, but even if he is, the mere fact that he was mistreated by prison officials is not sufficient, in itself, to permit a reasonable inference that he was discriminated against because of his disability. For all the foregoing reasons, Plaintiff does not state an ADA claim.

    III.    <u>Section 1983</u>

### A. MDOC, Michigan Parole Board, Absconder Recovery Unit

Plaintiff may not maintain a § 1983 action against the MDOC or any of its subdivisions (including the Michigan Parole Board and the Absconder Recovery Unit). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).

### B. Defendants Sinclair, Risely

Plaintiff also fails to state a claim against Defendants Sinclair and Risely. Plaintiff's only allegations against them are that they failed to properly address his complaints regarding the conduct of other officials. These facts are insufficient to state a claim, because government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Sinclair or Risely engaged in any active unconstitutional behavior.

One of the criminal statutes cited by Plaintiff makes it a crime for "two or more persons to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right secured to him by the Constitution or laws of the United States, or because of his having exercised the same[.]" 18 U.S.C. § 241. To the extent Plaintiff implies that Defendants Sinclair and Risely were part of a conspiracy with other Defendants to violate his rights, his allegations fail to

state a claim. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Here, Plaintiff's implied assertion of a conspiracy involving Defendants Sinclair and Risely is wholly conclusory. Thus, he fails to state a conspiracy claim against them.

Plaintiff also asserts that Defendants Sinclair and Risely violated state law and prison policy; however, § 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, an alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*,

954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff's assertion that Defendants violated state law or prison policy therefore fails to state a claim under § 1983.

## IV. Supplemental Jurisdiction

The Court has concluded that Plaintiff fails to state a claim under federal law against Defendants MDOC, Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely. To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim against them, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction with regard to Plaintiff's claims against Defendants MDOC, Michigan Parole Board, Absconder

Recovery Unit, Sinclair, and Risely. Accordingly, Plaintiff's state-law claims against them will be dismissed without prejudice.

### V. Venue

Under the revised venue statute, venue in federal-question cases lies in the district in which any defendant resides or in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). The events giving rise to Plaintiff's action occurred at the probation office in Lincoln Park, Michigan, at the Detroit Reentry Center, at a hearing site in Ypsilanti, Michigan, and at the Charles Egeler Reception and Guidance Center (RGC) in Jackson, Michigan. The probation office and Detroit Reentry Center are located in Wayne County. The site of Plaintiff's preliminary parole violation hearing is in Washtenaw County. RGC is located in Jackson County. Wayne, Washtenaw, and Jackson counties are within the geographical boundaries of the Eastern District of Michigan. 28 U.S.C. § 102(a).

In addition, after dismissal of Defendants MDOC, Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely, the remaining Defendants reside in the Eastern District of Michigan. The remaining Defendants are public officials serving in Wayne, Washtenaw, and/or Jackson counties, which is where they "reside" for purposes of this action. *See Butterworth v. Hill*, 114 U.S. 128, 132 (1885); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). Moreover, Plaintiff's claims against these Defendants arose in the foregoing counties, where Defendants allegedly committed the acts giving rise to this case. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 185-87 (1979).

There is one Defendant remaining in this action who may also reside in the Western District of Michigan, and that is Hearing Examiner Green. Defendant Green ostensibly presided

over Plaintiff's preliminary parole violation hearing in the Eastern District of Michigan, but Plaintiff asserts that his office is located in Lansing, Michigan. (Am. Compl., docket #10, Page ID#90.) Nevertheless, the Court has authority to transfer this case to another district in which the case "might have been brought," "[f]or the convenience of parties and witness, in the interest of justice[.]" 28 U.S.C. § 1404(a). Because all of the events giving rise to Plaintiff's claims occurred in the Eastern District, and because all of the remaining Defendants are public officials serving in the Eastern District, in the interest of justice and the convenience of the remaining parties, the Court will transfer this case to the Eastern District of Michigan after dismissal of the claims against Defendants MDOC, Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely. *See* 28 U.S.C. § 1404(a); *see also Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1291 (6th Cir.1989) (noting that § 1404(a) permits a court to transfer a case *sua sponte*).

An order will be entered that is consistent with this Opinion.[4]


Dated: <u>May 2, 2014</u>                             /s/ Robert Holmes Bell
                                                                       ROBERT HOLMES BELL
                                                                       UNITED STATES DISTRICT JUDGE

---

[4] It is noted that the Court has not reviewed Plaintiff's remaining claims against Defendants Clark, Fox, Saxton, Bradley, Edwards, Beam, White, Green, or Unknown Parties under the PLRA, nor has the Court reviewed Plaintiff's requests for appointment of counsel (docket #10-1, Page ID#100) and for production of documents (docket #10-1, Page ID#101).